UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JASON CHARLES MONK,

        Plaintiff,

        v.                              Case No. 04-C-1133

DAVID BETH,

        Defendant.

## DECISION AND ORDER

Plaintiff Jason Charles Monk filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. On January 20, 2005, the court granted the plaintiff's motion for leave to proceed *in forma pauperis* on a claim that he received inadequate medical care while detained at the Kenosha County Jail. Defendant Kenosha County Sheriff David Beth has filed a motion for summary judgment which will be addressed herein.

On February 3, 2006, the court denied the defendant's July 11, 2005 motion for summary judgment for failure to comply with the Local Rules. Specifically, the defendant's motion did not contain copies of Civil Local Rules 56.1, 56.2 or 7.1. *See* Civil L.R. 56.1(a) (E.D. Wis.). The court also ordered that the defendant could renew his motion for summary judgment, without refiling it, by providing the plaintiff with the notice required in the Local Rules.

On February 6, 2006, the defendant filed his renewed motion for summary judgment, along with the required notice. The plaintiff filed a response on May 1,

2006, and the defendant filed his reply on May 10, 2006. Thus, the defendant's motion for summary judgment is ready for resolution.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial–(1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law–is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Id.* at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a summary judgment motion is made and supported as provided in [Rule 56(c),] an adverse party may not rest upon the mere

-2-
Case 2:04-cv-01133-JPS   Filed 08/14/06   Page 2 of 13   Document 41

allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989). "However, we are not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citation omitted).

## FACTS[1]

On July 22, 2004, prior to his detention at the Kenosha County Jail ("Jail"), the plaintiff had knee surgery in Coon Rapids, Minnesota. (Compl. ¶ III.) The plaintiff had four wires and one screw placed in his knee area. *Id.* He was provided with a foam leg immobilizer, which has two metal strips inside of the foam, to keep his leg straight. *Id.*

On September 4, 2004, the plaintiff was arrested and brought to the Jail. *Id.* The plaintiff was a pretrial detainee at the Jail at all times relevant to this action. *Id.*

---

[1] Facts are taken from the plaintiff's sworn complaint, *see Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996), and the defendant's "Facts" section contained in their supporting brief.

He was ultimately charged with and convicted of felony forgery. (Affidavit of Attorney Marianne Morris Belke [Belke Aff.] ¶ 5, Ex. A.) Defendant Beth is the Kenosha County Sheriff.

**A. Complaint Allegations**

The plaintiff was placed in a non-medical unit for his first three days in the Jail and then moved to the medical ward due to his injury. (Compl. ¶ III.) The plaintiff alleges that he was not allowed his leg immobilizer because the metal strips inside the foam posed a security risk. *Id.* On September 10, 2004, Jail medical staff told the plaintiff that he would have to provide his own crutches. *Id.* He was unable to obtain them on his own and on September 13, 2004, Jail medical staff issued the plaintiff a pair of crutches. *Id.* However, upon repeated request for his leg "brace,"[2] the plaintiff was told he did not need it. *Id.* The plaintiff asserts that due to having no brace since September 4, 2004, and having to put pressure on his leg until he received crutches, the screw in his knee shifted and now needs to be replaced or taken out. *Id.* According to the plaintiff, this is due to Jail policies and procedures that were instituted by defendant Sheriff Beth. *Id.* The plaintiff seeks compensation for pain and suffering, and any future medical expenses. (Compl. ¶ IV.)

**B. Records from Kenosha County Regarding the Plaintiff**

On September 6, 2004, the plaintiff was seen on sick call regarding post-operative knee pain. (Affidavit of Chief Deputy Charles R. Smith [Smith Aff.] ¶ 2, Ex. A.) The notation indicates that the plaintiff had knee replacement surgery

---

[2] It appears that the plaintiff's leg "immobilizer" and his leg "brace" are the same thing.

three to four weeks prior and that the incision appeared to be healing well. *Id.* The plaintiff was instructed to have antibiotics brought in. *Id.*

On September 12, 2004, the plaintiff requested crutches indicating that he could not bear weight on the knee to walk around. *Id.* He indicated he had "no one to bring crutches in to him" as they were in Minnesota. (Smith Aff. ¶¶ 2-3, Exs. A, B.) The plaintiff was therefore given a pair of crutches for temporary use. *Id.* A Jail corporal was notified of the possible security risk. (Smith Aff. ¶ 2, Ex. A.)

On September 20, 2004, the plaintiff reported to medical personnel that he had pain in his right knee secondary to knee surgery. (Smith Aff. ¶ 4, Ex. C.) It was noted that there was swelling on the knee and that it was warm to the touch and had limited range of motion. *Id.* Nurse Johnson then prescribed the plaintiff Tylenol 1000 mg, three times daily. *Id.*

On September 22, 2004, the medical personnel at the Kenosha County Detention Center faxed a medical authorization for release of medical records, signed by the plaintiff, to Dr. Paul Havel in Elk River, Minnesota. (Smith Aff. ¶ 5, Ex. D.) The authorization for release of medical information was for "Jason Monk - Medical Records for knee replacement DOB 080575." (Smith Aff. ¶ 5, Ex. D at 1.) Dr. Havel's office responded the same day with copies of the plaintiff's records. (Smith Aff. ¶ 6, Ex. E.)

On September 30, 2004, there was a teleconference with Dr. Paul Havel, the orthopedic surgeon who performed the plaintiff's knee surgery. (Smith Aff. ¶¶ 2, 6, Exs. A, E.) Dr. Havel gave the following continual care orders for the plaintiff

regarding his knee. The nurse's notes state: "Per M.D. no brace should be given would just cause knee to stiffen. [D]oes recommend ortho follow up for potential re-hab issues. Reports meds as ordered are fine[.]" (Smith Aff. ¶ 2, Ex. A.)

**DISCUSSION**

The defendant contends that, 1) Jail staff was not deliberately indifferent to the plaintiff's medical needs; 2) the plaintiff does not stage a cognizable cause of action against defendant Beth; 3) the plaintiff's failure to allege or prove an express policy, custom, or practice bars his claims against the county; and 4) qualified immunity bars the individual capacity claim. The plaintiff contends that the facts prove that the defendant is not entitled to summary judgment.

It is well-established that a pretrial detainee must be afforded certain protections under the Fourteenth Amendment, including access to adequate medical care. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002) (citations omitted). Due process rights are at least as great as the protections afforded a convicted prisoner under the Eighth Amendment. *Id.* Accordingly, when considering a pretrial detainee's claim of inadequate medical care, the analogous standards under the Eighth Amendment are often used. *Id.*

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see*

*also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez*, 111 F.3d at 1373 (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or in the unnecessary infliction of pain. *See Reed v. McBride*, 178 F.3d 849, 852-53 (7th Cir. 1999); *Gutierrez*, 111 F.3d at 1371.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. *See Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the

risk and consciously disregarded it nonetheless." *Chapman*, 241 F.3d at 845 (citing *Farmer*, 511 U.S. at 840-42).

In determining whether an official's conduct rises to the deliberate indifference standard, a court may not look at the alleged acts of denial in isolation; it "must examine the totality of an inmate's medical care." *Gutierrez*, 111 F.3d at 1375. In *Gutierrez*, isolated incidents of delay, during ten months of prompt, extensive treatment did not amount to deliberate indifference. *Id.* Similarly, in *Dunigan v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999), "factual highlights" of neglect over a month and a half of otherwise unobjectionable treatment were insufficient to avoid summary judgment.

The plaintiff does not specifically address the defendant's four arguments. Moreover, he has not submitted any evidence for the court to consider in deciding the defendant's motion for summary judgment. The plaintiff does not dispute the defendant's facts. *See* Civil L.R. 56.2(e) (E.D. Wis.). Rather, the plaintiff points to the defendant's exhibits in support of his argument that the defendant is not entitled to summary judgment:

> [F]irst off Exhibit A of defendant's original motion for summary judgment on 9/06/04 I was instructed I had to have medication brought in none would be provided. On 9/12/04 I was finally issued a pair of crutches because I couldn't provide my own. On same date of same Exhibit it states "Corporal Bernhart was notified of quote "Possible Security Risk Issues" (re crutches)."

(Pl.'s Br. at 1.) The plaintiff goes on to say:

> As evidence submitted by plaintiff the Jail knew about injury, knew the extent of injury and damage which I was sustaining. The Jail ignored injury by (1) placing me in a non medical area of Jail for 3 days, (2) the

-8-

Case 2:04-cv-01133-JPS   Filed 08/14/06   Page 8 of 13   Document 41

> Jail ignored injury by not providing me with apperatice [sic] for walking until a week after I was incarcerated, (3) the Jail ignored injury by neglecting to provide me with my knee brace due to security risk at which is a procedure instituted by the Sheriff of Kenosha County clear and present facts [sic].

(*Id.* at 3.)

The defendant's first argument is that Jail staff was not deliberately indifferent to the plaintiff's medical need.³ Defendant Beth contends that the facts of this case show that the plaintiff asked for, and received, all appropriate, physician ordered treatment for his medical condition.

> Although he may disagree with the treatment, this does not result in a constitutional violation. Further, the fact that Mr. Monk may have had complications resulting from the reconstruction of his knee prior to incarceration does not, standing alone, impugn the treatment he received at the jail. The Jail staff responded repeatedly to Mr. Monk's concerns about his knee. (Affd. of Smith and Exhibits attached thereto). Mr. Monk cannot sustain a claim as a matter of law.

(Def.'s Br. at 8.)

The undisputed facts are that the plaintiff arrived at the Jail on September 4, 2004, three to four weeks after his knee surgery. He was seen on sick call on September 6, 2004, and was instructed to have antibiotics brought in. The plaintiff requested crutches on September 10, 2004, and was told he would have to provide his own, however on September 13, 2004, he was given a pair of crutches for temporary use. On September 20, 2004, the plaintiff complained of knee pain and Nurse Johnson prescribed him 1000 mg. of Tylenol three times daily. On September 22, 2004, medical staff faxed medical authorization for the release of the

---

³ There are no Jail medical staff defendants in this case. (*See* Court's Order of May 10, 2005 (dismissing without prejudice Unknown Kenosha County Jail Medical Staff Nurses because the plaintiff failed to identify them)).

plaintiff's medical records to Dr. Havel, the physician who performed the plaintiff's knee surgery. Dr. Havel provided the record the same day. On September 30, 2004, there was a teleconference with Dr. Havel who gave the following medical care instructions: "Per M.D. no brace should be given would just cause knee to stiffen. [D]oes recommend ortho follow up for potential rehab issues. Reports meds as ordered are fine[.]" (Smith Aff. ¶ 2, Ex. A.)

Upon these facts, no reasonable juror could find that Jail staff was deliberately indifferent to the plaintiff's medical needs. Rather, it appears that the plaintiff's treatment was more than adequate. Moreover, Dr. Havel approved of the medical care the plaintiff received at the Jail. The fact that the plaintiff did not approve of the medical care does not overcome summary judgment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (disagreement with medical professionals about treatment needs does not state a cognizable Eighth Amendment claim).

Next, defendant Beth contends that the plaintiff does not state a cognizable cause of action against him. Defendant Beth asserts that the plaintiff has not made any allegations indicating Beth's personal participation in the complaint allegations and therefore, any individual capacity claim against him must be dismissed.

Since 42 U.S.C. § 1983 "does not allow actions against individuals merely for their supervisory role of others," *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000), "[i]ndividual liability under § 1983 can only be based on a finding that the defendant caused the deprivation at issue." *Kelly v. Mun. Courts of Marion County, Ind.*, 97 F.3d 902, 909 (7th Cir. 1996). Also, § 1983 lawsuits against individuals

require personal involvement in the alleged constitutional deprivation to support a viable claim. *Zentmyer*, 220 F.3d at 811; *Zimmerman*, 226 F.3d at 574. Although direct participation is not necessary, there must at least be a showing that defendant Beth acquiesced in some demonstrable way in the alleged constitutional violation. *Kelly*, 97 F.3d at 909; *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986).

In this case, the plaintiff has made no showing that defendant Sheriff Beth was personally involved in the allegations giving rise to his Eighth Amendment claim. Thus, the plaintiff's claims against defendant Beth in his individual capacity will be dismissed. *See Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003).

The defendant's third argument is that the plaintiff's failure to allege or prove an express policy, custom, or practice bars his claims against defendant Beth in his official capacity. He argues that since the plaintiff has failed to show any violation of his constitutional rights by a defendant in his individual capacity, the plaintiff has failed to allege a cognizable cause of action against defendant Beth in his official capacity. *See Phillips v. City of Milwaukee*, 123 F.3d 586 (7th Cir. 1997) (en banc) (a finding that officers did not violate a plaintiff's constitutional rights moots the question whether the policies of the governmental agency were unconstitutional). Defendant Beth also contends that since the plaintiff has failed to allege or identify any Jail policy which resulted in a constitutional violation, the claim must be dismissed as a matter of law.

The theory of respondeat superior is not available against a local governmental entity under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New*

*York*, 436 U.S. 658, 694 (1978) (holding that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under 1983." *Id.* Courts have identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy or custom: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *See Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) (superceded by statute on unrelated point) (citations omitted).

However, neither the "City nor the policy officers' supervisor can be held liable on a failure to train theory or on a municipal policy theory absent a finding that the individual policy officers are liable on the underlying substantive claim." *Estate of Phillips,* 123 F.3d at 597; *see Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994). As the court has found that no constitutional violation occurred in this case, defendant Beth may not be held liable in his official capacity on a municipal policy theory.

Based on the foregoing, it is unnecessary to address the defendant's fourth argument, that qualified immunity bars the individual capacity claim.

Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (Docket #35) be and the same is hereby **GRANTED**; and,

**IT IS FURTHER ORDERED** that the plaintiff's claims and this action be and the same are hereby **DISMISSED**.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this __14th__ day of August, 2006.

BY THE COURT:

s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge